IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DARIUS EMORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-028 |
| | ) | |
| KAREN THOMAS, Unit Manager, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case file pursuant to 42 U.S.C. § 1983. Defendant moves for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED** (doc. no. 26), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

I.      **PROCEDURAL BACKGROUND**

Plaintiff submitted his amended complaint on April 4, 2022, and, because he is proceeding IFP, the Court screened the complaint, found Plaintiff had arguably stated viable excessive force and retaliation claims against Defendant, and recommended dismissal of only the monetary relief claims against Defendant in her official capacity. (See doc. nos. 8, 10.) After United States District Judge Dudley H. Bowen adopted that recommendation as the opinion of the Court, Defendant timely filed her answer on July 5, 2022, and the Clerk issued a Scheduling Notice. (Doc. nos. 12, 17, 18.)

Defendant filed a motion for summary judgment on December 15, 2022. (Doc. no. 26.) The Clerk of Court then issued a notice to Plaintiff that satisfies the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*). (See doc. no. 29.) In accordance with Local Rule 56.1, Defendant submitted a Statement Of Material Facts in support of her summary judgment motion. (Doc. no. 26-2.) Plaintiff timely filed a responsive statement, (doc. no. 32), however, Plaintiff's statement does not respond to each fact in Defendant's Statement of Material Fact and consists of conclusory allegations. See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."). Because Plaintiff did not contradict Defendant's factual assertions with any affidavits or other evidence, the Court deems admitted all portions of Defendant's Statement of Material Facts that have evidentiary support in the record. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

However, this does not automatically entitle Defendant to summary judgment because as the movant, Defendant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir.

2

2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTUAL BACKGROUND

### A. Defendant's Use of Force

The critical facts of this case are uncontested. On February 10, 2022, just after 9:00 am, Plaintiff was in his cell in Dorm E1 when it came time for morning inspection. (Doc. no. 30-1, Thomas Decl. ¶ 3.) For security purposes and to discover weapons and other contraband, TSP staff inspect inmates' cells each morning, and inmates are required to prepare for the morning inspection by making their beds, neatening their cell, and standing by their bed when ready. (Id. ¶ 4.) Inmates are warned if they do not voluntarily prepare for inspection, they will be forced to prepare. (Id.) The record is undisputed that on the morning of February 10th, Plaintiff, his cellmate, and fourteen other inmates in Dorm E1 refused to prepare for inspection. (Id. ¶ 5.) Anticipating significant security issues with the large number of noncompliant inmates, Defendant and security staff determined they must use force to motivate inmates to prepare for inspection. (Id.) Defendant explains pepper spraying inmates is a common, low risk method to safely ensure compliance, as it lessens an inmate's ability to physically resist a security officer who enters his cell. (Id. ¶ 6.) Prison staff began video recording before they started their use of force on February 10th.[1] (Id. ¶¶ 5-10, Ex. A, Videos 1-4.)

---

[1] Defendant's fourth submitted video shows Defendant reading a statement recounting the events of February 10th and claiming the video was filmed the same day. (See Video 4; doc. no. 26-2, ¶ 30.) As Defendant is dressed entirely differently than in other videos from February 10th, the Court is skeptical. However, the video is largely cumulative of other evidence, which clearly supports the narrative in Defendant's statement of material facts.

3

After identifying herself for the camera and explaining several inmates had refused to prepare for inspection,[2] Defendant approached each cell with a noncompliant inmate, looked through the cell window, and provided a final verbal warning to prepare for inspection. (Video 1, 00:00-00:40.) If an inmate did not immediately prepare for inspection after Defendant's warning, a security officer sprayed pepper spray into the cell through the small flap in the middle of the cell door. (Video 1, 00:30-2:00; Thomas Decl. ¶¶ 6-7.) After giving warnings, Defendant ordered security officers to spray five of the twenty cells on the first floor before moving to the second floor. (Video 1, 00:30-2:00.) Once there, Defendant looked into Plaintiff's cell, E1-231, and yelled, "Inmate, get ready for inspection!" (Id., 02:13-02:17.) Plaintiff failed to do so, and security officers opened the flap and sprayed a single, one-second burst of pepper spray into Plaintiff's cell. (Id., 02:17-02:27; Thomas Decl. ¶ 7.) Defendant proceeded to pepper spray two more cells with noncompliant inmates on that floor. (Video 1, 02:27-04:25.)

After Defendant finished, security staff immediately began to escort each sprayed inmate individually outside for fresh air, decontamination, and medical examination. (Video 2, 13:25-17:45; Video 3, 00:00-14:30; Thomas Decl. ¶ 9.) The procession began with inmates on the first floor. Approximately forty minutes after being pepper sprayed, Plaintiff and his cellmate were handcuffed and escorted outside where medical staff quickly examined and cleared them without treatment. (Video 3, 15:20-19:16; doc. no. 26-4, Lewis Decl. ¶ 6 and Ex. B.) Plaintiff was returned to his cell, where he was able to wash himself in the cell sink. (Video 3, 19:16-20:20; Thomas Decl. ¶ 11; Lewis Decl. ¶ 6 and Ex. B.) Plaintiff's cell also had a vent allowing air to circulate

---

[2]Defendant misstated the date as February 10, 2021. There is no dispute the events in question occurred in 2022.

from outside and under the cell door.  (Thomas Decl. ¶ 12.)

Plaintiff did not shower right away, however.  Shower days for Plaintiff's dorm E-1 are Monday, Wednesday, and Friday between 9:00 am and 1:00 pm.  (Id. ¶ 12.)  The dorm only has six showers, and each inmate must be escorted to the showers by two prison guards.  Defendant claims Plaintiff received a shower later in the day, incorrectly stating February 10th was a Wednesday, shower day.  (Id. ¶ 11.)  However, February 10th was a Thursday,[3] meaning Plaintiff would not have received a shower under Defendant's facts until the next morning, potentially more than twenty-four hours later.

After the incident, Defendant issued Plaintiff a disciplinary report for failure to follow her instructions, resulting in Plaintiff's loss of visitation, phone, and commissary privileges for thirty days.  (Doc. no. 32, p. 2.)  Plaintiff argues use of a disciplinary report would have been a less dangerous means of enforcement on February 10th.  (Id.)

**B.     Effect of Pepper Spray on Plaintiff**

Defendant has produced a declaration from Dr. Sharon Lewis, the Statewide Medical Director for the Georgia Department of Corrections, analyzing the effects of pepper spray on Plaintiff's health.  (See generally Lewis Decl. ¶¶ 3-12.)  Pepper spray causes a burning sensation on uncovered parts of the body, especially the eyes, nose, mouth, and lungs, but its effects only last for a fifteen to forty-five minutes, causing no long-term damage.  (Id.)

---

[3]Under Federal Rule of Evidence 201(b), the Court may take judicial notice of the 2022 calendar.  See Walker v. Indian River Transp. Co., 741 F. App'x 740, 743 n.3 (11th Cir. 2018).

Plaintiff has asthma, and, prior to the February 10th incident, his medical records showed his asthma was mild and under good control, and Plaintiff was prescribed an inhaler. (Id. ¶ 5 and Ex. A.) When medical staff examined Plaintiff on February 10th soon after he was pepper sprayed, they noted he appeared alert, said, "I'm good," had some eye irritation due to the pepper spray, and suffered no breathing issues or other injuries. (Id. ¶ 6 and Ex. B.) Plaintiff's next medical appointment was on April 21, 2022, where he stated he used his inhaler once nightly, had not had any unscheduled medical visits due to his asthma, and had not sought any inhaler refills. (Id. ¶ 7 and Ex. C.) His asthma symptoms were generally unchanged from the last visit in October 2021, and his Peak Flow Rate had even improved. (Id.) His prior inhaler prescription was renewed. (Id. ¶ and Ex. D.)

At his next appointment on July 14, 2022, Plaintiff's asthma was again unchanged from the last visit and he still had not sought inhaler refills or unscheduled medical visits. (Id. ¶ 9 and Ex. F.) However, Plaintiff stated he had been using his inhaler two to three times a day. (Id.) While medical staff could have found Plaintiff's asthma was therefore moderate, they still believed it was mild and prescribed him a different inhaler. (Id.) Dr. Lewis explains any increase in Plaintiff's asthma symptoms or inhaler use in July was likely due to the heat and humidity of the summer. (Id. ¶ 12.) Plaintiff also suffered from allergies. (Id. ¶ 8 and Ex. E.) Plaintiff's last appointment records from October 6, 2022, show his asthma was still mild, under fair control, and unchanged from the last visit. (Id. ¶ 10 and Ex. H.) Upon examination of Plaintiff's medical records, Dr. Lewis states the February 10th use of pepper spray did not worsen or exacerbate Plaintiff's asthma. (Id. ¶¶ 11-12.)

### C.     Plaintiff's Claims of Retaliation

On January 5, 2022, a month before the above incident, Defendant used pepper spray against an inmate in the cell next to Plaintiff.  (Doc. no. 30-2, Thomas Decl. Ex. B.)  Plaintiff told Defendant the chemicals were reaching him and triggering his asthma symptoms.  (Id. at 5-6.) Defendant yelled at Plaintiff to get away from his cell door and threatened to spray him as well. Plaintiff complied, and Defendant did not spray Plaintiff.  (See id.)  On January 6, 2022, Plaintiff filed Grievance No. 333879 against Defendant regarding her threat.  (Id.)  The grievance was denied initially on March 4, 2022, and on appeal on March 29, 2022.  (Id. at pp. 1-5.)

In his amended complaint, Plaintiff alleges Defendant used pepper spray against him on February 10th because of the grievance he filed against her on January 6th.  (Doc. no. 6, p. 5.)  In her declaration, Defendant claims she did not know about the grievance filed against her at the time she had officers spray Plaintiff's cell.  (Thomas Decl. ¶ 14.)  She further explains if she had known about the grievance, she would have been required to submit a written statement which would be attached to the grievance file.  (Id.)  There is no responsive statement from Defendant to the January 6th grievance in the record, and Defendant claims she first learned about the grievance when she received a copy of this lawsuit.  (Id.; doc. no. 30-3, pp. 1-5.)  Under penalty of perjury, Defendant states she ordered Plaintiff pepper sprayed on February 10th only because he failed to follow instructions and prepare for inspection that morning.  (Thomas Decl. ¶ 15.)  Plaintiff presents no evidence in response but argues the standard operating procedures did not allow for pepper spray in his situation, meaning Defendant must have been motivated by something other

7

than ensuring compliance.  (See doc. no. 32, p. 3.)

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross,

663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

> B. **Defendant is Entitled to Summary Judgment on Plaintiff's Eighth Amendment Excessive Force Claim**

> 1. **Excessive Force Standard**

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id.  *De minimis* uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted).  However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue

9

an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322). Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any

10

action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

> **2. Defendant Applied Minimal Force in a Good-Faith Effort to Maintain or Restore Discipline, Not Maliciously and Sadistically to Cause Harm**

Defendant did not use constitutionally excessive force against Plaintiff. As an initial matter, Defendant used no more than *de minimis* force. A single, one-second burst of pepper spray that required no medical treatment is not the sort of force "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10; *Compare* Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") *with* Hudson, 503 U.S. at 10 (concluding bruises, swelling, loosened teeth, and cracked dental plate were not *de minimis* for Eighth Amendment purposes). Therefore, Plaintiff cannot satisfy the objective component of an excessive force claim.

For the subjective component, consideration of the Hudson factors also shows Defendant is entitled to summary judgment. The use of force here was necessary to ensure

11

compliance with Defendant's orders. Plaintiff does not contest he failed to follow multiple orders to prepare for inspection the morning of February 10th. Because Defendant sought to inspect Plaintiff's cell for the express purpose of finding contraband such as weapon, she was justified to take any indication of belligerence seriously before she sent an officer into Plaintiff's cell. Defendant needed a method to protect her officers, and prison officials "need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Indeed, the Eleventh Circuit has recognized the use of sprays with inflammatory properties may be a reasonable alternative to escalating a potentially dangerous situation without causing permanent injury, particularly when the spray is of a short duration and the recipient is provided adequate decontamination. See Danley v. Allen, 540 F.3d 1298, 1307-08 (11th Cir. 2008), *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); Burke v. Bowns, 653 F. App'x 683, 696 (11th Cir. 2016). Here, Defendant used a minimal, one-second burst of pepper spray to control Plaintiff, and, as a result, he acquiesced to being handcuffed and officers were able to open his cell without risk to their safety. See Scroggins v. Davis, 346 F. App'x 504, 505 (11th Cir. 2009) (*per curiam*) (citing Danley, 540 F. 3d at 1303) (finding minimal amount of force in form of two short bursts of pepper spray after prisoner refused numerous commands from prison staff was proportional response to bring prisoner under control).

Medical staff saw Plaintiff quickly afterwards, and, although he was unable to shower for potentially twenty-four hours, Plaintiff was allowed fresh air and does not deny he had the ability to wash himself in his own cell's sink immediately afterwards. In both his amended

complaint and response to the motion for summary judgment, Plaintiff provides no detail of any injuries he suffered as a result of the pepper spray or the lengthy period where he was unable to shower. In fact, no detail of any injury from the pepper spray exists other than the medical report from that morning documenting simple eye irritation.

Plaintiff argues Defendant had a less aggressive means of compliance in the form of a disciplinary report. However, Defendant did attempt to verbally threaten Plaintiff into compliance, but he declined to heed her warnings. She faced a potentially physical threat in response to a valid order, and, in light of the deference accorded to prison officials' efforts to ensure order, and her response was measured, appropriate, and not excessive. No reasonable juror would disagree. See Brockington v. Stanco, No. 514CV38MTTCHW, 2016 WL 4443204, at *5-6 (M.D. Ga. May 25, 2016) (explaining many ways refusal to comply with orders threatens inmate and staff safety in prison), *adopted by* 2016 WL 4445475 (M.D. Ga. Aug. 19, 2016). Her response only used a swift, minimal, proportional amount of force that ensured compliance quickly. See Burke, 653 F. App'x at 696 (finding no excessive force when officers sprayed two short bursts of pepper spray into cell after plaintiff refused to submit to handcuffs and repeatedly did not comply with commands); Thompson v. Carani, No. CV 106-099, 2008 WL 5088541, at *3 (S.D. Ga. Dec. 2, 2008) (granting summary judgment to defendant after finding inmate plaintiff "refused to follow Defendant['s] orders, that Defendant . . . warned him he would be sprayed, that he was sprayed only once, and that he did not actually feel the effects of the pepper spray."); see also Vinyard v. Wilson, 311 F.3d

13

1340, 1348 (11th Cir. 2002) ("[P]epper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.").

Accordingly, based on the undisputed facts, no reasonable juror could find Defendant's actions meet both the objective and subjective components of an Eighth Amendment excessive force claim, and summary judgment should be granted to Defendant.

### C. Defendant is Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, an inmate must show that (1) he engaged in speech or conduct protected by the Constitution; (2) the defendant took action of such a nature that it would likely deter a person of ordinary firmness from exercising that right; and (3) a causal connection exists between the protected activity and the retaliatory action. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011); Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008); Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). In general, "[a] prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment." Thomas v. Lawrence, 421 F. App'x 926, 928 (11th Cir. 2011) (citing Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008)).

"The causation prong 'asks whether the defendants were subjectively motivated' by the plaintiff's protected speech." Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (quoting Smith, 532 F.3d at 1278). Plaintiff bears the burden of showing subjective motivation, and

14

> once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on his motion for judgment as a matter of law or prior to trial on summary judgment.

Smith, 532 F.3d at 1278 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Further, "[t]o defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive, but he must produce evidence from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action." Rager v. Augustine, No. 5:15CV35/MW/EMT, 2017 WL 6627416, at *7 (N.D. Fla. Nov. 8, 2017) (citing Crawford-El v. Britton, 523 U.S. 574, 590-95, 600 (1998)), *adopted by* 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), *aff'd*, 760 F. App'x 947 (11th Cir. 2019); see Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 840 (11th Cir. 2014) ("For the third element, a prisoner must allege facts showing that the alleged retaliatory conduct would not have occurred but for the retaliatory motive."); Benton v. Rousseau, 940 F. Supp. 2d 1370, 1377 (M.D. Fla. 2013) (utilizing but-for test on retaliation claim at summary judgment).

Assuming *arguendo* Plaintiff's grievance was protected speech and being pepper sprayed would deter such speech, Plaintiff's claim fails on causation. Plaintiff produces no evidence other than his own conclusory allegations that Defendant's use of pepper spray on February 10th was motivated by his grievance filed the month before. Therefore, Plaintiff fails to meet his burden as he "[has] not demonstrated that a rational trier of fact could have found a causal connection between the two events." Moulds, 345 F. App'x at 393; see Harris v.

15

Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment for defendant because plaintiff "produced nothing beyond his own conclusory allegations suggesting that [defendant's] actions . . . were motivated by retaliatory animus"); Gayle v. Daughtry, No. CA120740, 2013 WL 4046467, at *6 (S.D. Ala. Aug. 8, 2013) (granting summary judgment to defendant because plaintiff failed to establish a causal relationship by relying on his own conclusory allegations); see also Horsman v. Bentley, No. 2:11CV769-MHT, 2014 WL 6673847, at *33 (M.D. Ala. Nov. 24, 2014) (The record before the court . . . provides no basis on which a reasonable fact finder could fairly infer the requisite subjective motivating factor.").

Defendant attests she was unaware of the grievance at the time, and no record evidence shows she had notice until filing of this complaint. Plaintiff barely contests Defendant's unequivocal statement, only vaguely questioning her credibility by saying "all evidence shows the Defendant scornfully violat[ed] the standard operation procedures, and tamper[ed] with evidence." (Doc. no. 32, p. 3.)

Notwithstanding, it matters little whether she was aware of the grievance. No reasonable juror would find Defendant pepper sprayed Plaintiff on February 10th because of Plaintiff's January 6th grievance. Her decision to pepper spray Plaintiff was clearly supported and motivated by Plaintiff's actions that morning. She treated Plaintiff no differently than the other seven inmates she pepper sprayed that morning, and Plaintiff alleges no retaliation in her use of force against them. "This is not a sequence of events from which one could, without more, plausibly infer a retaliatory motive." Smith v. Florida Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*). Therefore, even if Plaintiff had met his burden to show

subjective motive, Defendant has shown she "would have taken the same action in the absence of the protected activity." Smith, 532 F.3d at 1278.

Plaintiff has not met his burden to show his grievance was a motivating factor behind the use of pepper spray, and, regardless, Defendant clearly would have acted as she did even in the absence of the grievance. No reasonable juror would disagree based on the undisputed facts, and Defendant is entitled to summary judgment.

### D. Defendant's Arguments Regarding Immunity and Damages are Moot

Defendant argues she is entitled to qualified immunity, and, even if a constitutional violation is found, Plaintiff cannot recover compensatory damages because his injuries are *de minimis*. (Doc. no. 26-1, pp. 11-12, 18-20.) Because Defendant is entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of immunity and damages are ultimately moot, and the Court will not address them. See Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*).

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED** (doc. no. 26), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of April, 2023, at Augusta, Georgia.

> _/s/ Brian K. Epps_
> BRIAN K. EPPS
> UNITED STATES MAGISTRATE JUDGE
> SOUTHERN DISTRICT OF GEORGIA